UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD BILLITIER, JR.,

                                        Plaintiff,

                                                                             <u>DECISION AND ORDER</u>

                                                                             08-CV-6482L

              v.

MERRIMACK MUTUAL FIRE INSURANCE
COMPANY,

                                        Defendant.
_____

       Plaintiff Ronald Billitier, Jr. ("Billitier") brings this action against Merrimack Mutual Fire Insurance Company ("Merrimack"), seeking coverage for water damage pursuant to a property insurance policy he purchased from Merrimack. Merrimack now moves for summary judgment dismissing the complaint, on the grounds that its denial of coverage to Billitier for the underlying damages was justified by an applicable policy exclusion. (Dkt. #19). For the reasons discussed below, the motion is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

       At some point prior to January 24, 2008, Billitier purchased an insurance policy (the "Policy") from Merrimack to cover potential losses to a residential dwelling (the "Property") owned and maintained by Billitier as rental property.

       The Policy provided, in relevant part:

> We insure against risk of direct loss to property . . . however, we do not insure loss [that is] caused by:
>     a.    freezing of a plumbing, heating air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling

> is vacant, unoccupied or being constructed *unless you have used reasonable care to:*
> (1) *maintain heat in the building; or*
> (2) *shut off the water supply and drain the system and appliances of water . . .*

Dkt. #19-4, Exh. A at p. 4 (emphasis added).

Subsequently, between December 2007 and January 24, 2008, water pipes in the Property froze, burst, and caused damage alleged by Billitier to total $100,084.98. Billitier timely made a claim under the Policy for the damage, which Merrimack denied on the grounds of the exclusion for frozen pipes in an unoccupied, unheated property with undrained plumbing.

On September 18, 2008, Billitier commenced the instant action in state court (later removed to Federal Court), requesting damages in the amount of $100,084.98, together with interest, costs, disbursements and attorneys fees. (Dkt. #1). Billitier claims that Merrimack breached the terms of the Policy and inappropriately relied on the exclusion, because Billitier had used reasonable care to heat the Property.

**DISCUSSION**

**I.      Summary Judgment**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). (2000). In determining a motion for summary judgment, the Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must construe all inferences from underlying facts in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**II.     Merrimack's Reliance on the Policy Exclusion**

Many of the circumstances under which the Property was damaged are undisputed. The parties agree that at the time of the damage, the Property was unoccupied, since Billitier's last tenants vacated the Property in "early December," and that electric service to the Property – which was necessary to run its furnaces and provide heat – had been discontinued by the provider, Rochester Gas & Electric ("RG&E"). Billitier, who testified at his deposition that he physically inspected the Property within days of the tenants' departure, immediately discovered that the power had been disconnected. (Dkt. #19-11 at 37, #19-14 at 20, 40-41).

Billitier concedes that he did not disconnect the water supply or drain the system and appliances of water in order to prevent the possibility of frozen and/or leaking pipes. Rather, as soon as he discovered that electric service to the Property had been discontinued, Billitier called RG&E and requested that power be restored. (Dkt. #19-14 at 46). Billitier testified that he made specific reference to a "revert agreement" he believed that he had signed with RG&E some years prior, which required that in the event his tenants vacated, the power would be transferred to his name and billed to him, instead of turned off. (Plaintiff does not have a copy of the alleged revert agreement, and RG&E has no copy or record of it either, although plaintiff contends he was told by an RG&E representative that a number of such agreements had been lost by RG&E.) Billitier testified that during the telephone conversation, an RG&E representative assured him that power would be restored within "a couple of days" or within "a matter of days," or by "the week of [December] 9th." (Dkt. #19-12 at 70, Dkt. #23 at ¶6).

RG&E does not dispute that Billitier called to request reinstatement of electric service. However, the parties disagree as to whether further action was required of Billitier, including whether Billitier was entitled to rely on RG&E's representations that power would be restored within days, and whether Billitier acted reasonably in failing to drain the pipes or heat the Property in some

other way in the meantime. RG&E records show that on December 12, 2007, a service call to restore power was unsuccessfully attempted at the Property, that plaintiff was not present, and that keys to the Property, which Billitier had previously provided to RG&E for access, allegedly did not work. (Dkt. #21-1, Exh. E). Power was not restored at that time.

For his part, Billitier testified that although he was informed that RG&E would need to send a technician to the Property to restore power, he was *not* told that he would need to be there, or that he otherwise needed to take any further action to facilitate the restoration of power. (Dkt. #19-12 at 62-63). Billitier was never informed by RG&E that its effort to connect electric service had been unsuccessful. (Dkt. #23).

Billitier testified that in late December and early January, he made about two trips to inspect that Property's exterior to ensure that it remained in good condition for eventual sale or rental to new tenants, and noticed nothing unusual. In mid-January, he accompanied friends on an out-of-town golfing trip, and was unable to visit or inspect the Property for approximately two weeks. (Dkt. #19-12 at 95, 100-101, Dkt. #19-13 at 102). On or around January 24, 2008, Billitier again visited the Property, and discovered extensive water damage.[1]

While the precise timing of the ruptured pipes at the Property is unclear, it appears that it occurred sometime between Billitier's physical inspection of the Property's interior after his tenants left in or around the first week of December 2007, and his discovery of the water damage on or about January 24, 2008.

In support of its instant motion, Merrimack claims that the Policy's exclusion is clear and unambiguous, and that the issue of whether Billitier used "reasonable care" may be resolved as a matter of law based upon the undisputed facts. Billitier argues that the term is ambiguous, and/or

---

[1] Billitier was unable to recall at his deposition precisely what day he discovered the water damage, but estimated that it was between January 22 and January 24, 2008. Based upon the fact that the fire department contacted RG&E on January 24, 2008 and directed it to turn off the main power on the street due to the water damage on the Property, the Court will use January 24, 2008 as the operative date for purposes of the instant motion. (Dkt. #21 at ¶13).

that there are ample material questions of fact which preclude summary judgment. (Dkt. #19-4, Exh. A at 4).         Under New York law, "[a]mbiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *30 Gardenville, LLC v. Travelers Prop. Cas. of America*, 387 F. Supp. 2d 205, 212 (W.D.N.Y. 2005).

In the ordinary case, resolution of whether a party's actions are "reasonable" requires a sufficiently fact-intensive analysis to preclude summary judgment. The Second Circuit has observed, however, that "[w]hile the question of whether a party has used reasonable or best efforts *may* depend on material issues of fact, such is not always the case [and the issue of reasonable efforts may be decided on summary judgment where it] does not depend on triable issues of fact." *Scott-Macon Securities, Inc. v. Zoltek Companies, Inc.*, 2007 U.S. App. LEXIS 23356 at *2-*3 (2d Cir. 2007) (applying New York law) (emphasis in original).

Here, I find that summary judgment would be inappropriate, because resolution of whether Billitier used "reasonable care" under the circumstances presented and within the meaning of the Policy exclusion *does* depend on triable issues of fact. It would be inappropriate for the Court, on this record, to rule as a matter of law that plaintiff failed to exercise reasonable care to maintain heat at the Property.

Assessing whether "reasonable care" was taken necessarily includes a fact-intensive analysis of, among other things, the parties' credibility, the extent of RG&E's representations or instructions to Billitier, Billitier's actions to ensure the provision and continuation of electric service to the Property when it was unoccupied, the reasonableness of Billitier's reliance on RG&E's statements in connection with the request for power restoration, the impact of RG&E's failure to ever notify Billitier that it had been unable to restore service, and the reasonableness of Billitier's decision not to drain the plumbing or provide for an interim heat source, viewed in light of prevailing weather conditions in December 2007, which are alleged to have been unseasonably warm. Resolution of such material questions of fact is best reserved for the jury.

## CONCLUSION

For the foregoing reasons, Merrimack's motion for summary judgment (Dkt. #19) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 18, 2011.